IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TRACER CONSTRUCTION COMPANY and NVENT THERMAL LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRAD FASELER and TERRAPIN INDUSTRIAL LLC,<br><br>    Defendants. | Civil Action No. 24-cv-02177<br><br>Jury Trial Demanded |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Tracer Construction Company and nVent Thermal LLC (collectively "Plaintiffs" or "Tracer") bring this action against their former trusted employee, Brad Faseler ("Faseler"), and Terrapin Industrial LLC ("Terrapin"), a corporation in which Mr. Faseler serves as the Founder and Chief Executive Officer (collectively "Defendants"). Tracer seeks a declaratory judgment that it is the owner of a United States Patent and United States Patent Applications Mr. Faseler filed while an employee of Tracer, in violation of his employment agreement. Tracer alleges as follows:

## THE PARTIES

1.    Tracer Construction Company is a Delaware corporation with a principal place of business located at 15375 Memorial Drive, Houston, Texas.

2.    nVent Thermal LLC is a Delaware corporation with a principal place of business located at 899 Broadway St., Redwood City, California.

3.    nVent Thermal LLC and Tracer Construction Company are each ultimately owned by nVent Electric PLC ("nVent").

4.    Upon information and belief, Terrapin Industrial LLC is a Texas domestic limited-liability corporation with a principal place of business located at 3703 Gramercy Street, Houston,

1

Texas, 77025, United States. Upon information and belief, Terrapin Industrial LLC was created on October 21, 2021. Upon information and belief, Terrapin Industrial LLC sells, offers to sell, and/or uses products and services throughout the United States used for heat management and related services, such as instrument enclosures, heat liners, insulation, heating systems, and pipe stands, including in this District.[1]

5. Upon information and belief, Brad Faseler is an individual, who is a citizen of the United States and a resident of the State of Texas.

## JURISDICTION AND VENUE

6. The claims for Tracer's ownership of the patent and applications arise under 35 U.S.C. § 261 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

7. The Court has federal-question subject matter jurisdiction over Plaintiffs' ownership and patent claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (patents).

8. The Court has supplemental jurisdiction over Tracer's breach of contract claims because those claims form part of the same case or controversy under Article III of the United States Constitution and are based on the same underlying nucleus of fact.

9. This Court has personal jurisdiction over Defendants. Defendants reside in and have continuous and systematic business contacts with the State of Texas. Defendants conduct business throughout Texas, by shipping, distributing, offering for sale, selling, and advertising products and/or services in the State of Texas and the Southern District of Texas.

10. Defendants maintain locations in Richwood, Texas and Houston, Texas responsible for sales, offers to sell, and/or use of products and services in the United States, including in the Southern District of Texas. Defendants regularly do business or solicit business, engage in other

---

[1] https://terrapin-industrial.com/

persistent courses of conduct, and/or derive revenue from products and/or services provided to individuals in the State of Texas.

11. Defendants have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patent (as defined below) with the intention and expectation that they will be purchased and used by consumers in the Southern District of Texas.

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because Defendants have a regular and established place of business in this District. Upon information and belief, Defendants have at least one physical location in the Southern District of Texas, at a facility in Richwood, Texas at 1806-2 North Brazosport Boulevard and have a principal place of business at 3703 Gramercy Street, Houston, Texas, 77025, United States. In addition, Mr. Faseler was employed by Tracer in Houston, and the patent ownership and contractual disputes described herein arise from Mr. Faseler's acts and omissions in this District.

## FACTUAL BACKGROUND

### A. nVent's Business

13. nVent is a leading global provider of electrical connection and protection solutions. These inventive electrical solutions enable safer systems and ensure a more secure world. nVent designs, manufactures, markets, installs and services high performance products and solutions that connect and protect mission critical equipment, building and essential processes. nVent offers a comprehensive range of enclosures, electrical fastening solutions and thermal management solutions across industry-leading brands that are recognized globally for quality, reliability and innovation.

14. Among the various heat management systems that nVent develops and manufactures are its RAYCHEM® and TRACER® products. nVent's RAYCHEM® products offer advanced heat tracing solutions for industrial, commercial, and residential systems. nVent's TRACER®

3

products offer full lifecycle services for heat tracing, controls, thermal insulation, and power infrastructure.

### B. Mr. Faseler was a Tracer Employee From 2001 until 2023

15. In 2001, Mr. Faseler became an employee of Tracer Construction Company and Tracer Field Services, Inc. While Tracer Field Services, Inc. is now defunct, its successor-in-interest is Plaintiff nVent Thermal LLC.

16. On October 1, 2001, around the date that Faseler became an employee of Tracer, Faseler entered into an Employment Agreement (attached as Exhibit A) with Tracer. The terms of this Employment Agreement continued to govern Mr. Faseler's employment until he left Tracer in 2023.

17. In exchange for Faseler entering into the Employment Agreement, Faseler received financial compensation and various employee benefits, among other valuable consideration.

18. In his roles at Tracer, Faseler actively worked to develop proposals offering customers heat tracing and insulation systems that included products and systems like those addressed in the patents and patent applications discussed herein. Absent his employment with Tracer, Mr. Faseler would never have been in a position to recognize the need for these products.

19. Faseler's LinkedIn biography provides more details on his activities during his Tracer employment, which included "author[ing] technical papers for front end development studies," as well as "provid[ing] technical specification reviews for and implementation of technical variances." Faseler's LinkedIn biography is attached as Exhibit B.

20. Faseler's employment with Tracer continued until he voluntarily resigned in 2023.

### C. Faseler Assigned His Inventions to Tracer in his Employment Agreement

21. A central feature of Mr. Faseler's Employment Agreement was Section 10, entitled "Inventions." Faseler agreed that he must "disclose promptly" to Tracer all ideas for inventions

4

related to the business or activities of the Tracer Companies or which he conceived as a result of his employment. Faseler further agreed that he "hereby assigns" all his interest in any such inventions to Tracer and that he would execute, whenever requested, any instruments necessary to protect Tracer's interests in the inventions. In particular, Sections 10 provides as follows:

> **10. INVENTIONS.** Employee shall disclose promptly to the Tracer Companies any and all conceptions and ideas for inventions, improvements and valuable discoveries, whether patentable, copyrightable, or not, which are conceived or **made by Employee solely or jointly with another *during the period of employment* and which are related to the business or activities of the Tracer Companies or which Employee conceives as a result of his employment by the Tracer Companies, and Employee *hereby* assigns and agrees to assign all his interest therein to the Tracer Companies or its nominee**. Whenever requested to do so by the **Tracer Companies, Employee shall execute any and all applications, assignments or other instruments that the Tracer Companies shall deem necessary** to apply for and obtain Letters Patent of the United States or any foreign country or to otherwise protect the Tracer Companies' interest therein. These **obligations shall *continue beyond* the termination of employment with respect to inventions**, improvements and valuable discoveries, whether patentable, copyrightable or not, and shall be binding upon Employee's assigns, executors, administrators and other legal representatives.

Ex. A, § 10 (emphasis added).

22. Faseler further agreed that his obligations under Section 10 would survive his separation from Tracer. For example, Section 3(d) of the Employment Agreement provides that "[i]n the event of termination of this agreement for any reason . . . Employee's obligations under Sections 5, 6, 7, 8, 9, 10, 11, and 12 hereof share survive such termination." Ex. A, § 3(d).

**D. Terrapin's Business**

23. Upon information and belief, Terrapin Industrial, LLC was founded by Mr. Faseler in October 2021. Upon information and belief, Terrapin Industrial LLC is a company that focuses on, *inter alia*, providing flexible installation and decommissioning of instrument enclosures in industrial systems.

24. Terrapin's instrument enclosures compete with certain services and products offered

5

and sold by Tracer and nVent.

25. In April 2023, Faseler became the CEO of Terrapin Industrial LLC.

### E. Faseler Conceived of and Sought to Patent Inventions Disclosed in U.S. Provisional Patent Application No. 62/481,680 While Employed by Tracer

26. On April 4, 2017, while employed by Tracer, Faseler filed U.S. provisional patent application No. 62/481,680 (hereinafter, the '680 provisional application).

27. Faseler is listed as the sole inventor on the '680 provisional application.

28. The '680 provisional application discloses aspects of a soft removable enclosure that purported to provide better efficiency from corrosive environments and improved efficiency during installation.

29. The subject matter of the '680 provisional application includes technology that Faseler was involved in while an employee of Tracer.

30. The inventions of the '680 provisional application were conceived as a result of Mr. Faseler's employment at Tracer. During his employment, Mr. Faseler actively worked to develop proposals offering customers heat tracing and insulation systems that included products and systems like those addressed in the '680 provisional application. Absent his employment with Tracer, Mr. Faseler never would have been in a position to recognize the need for such products and systems.

31. Faseler concealed from Tracer the '680 provisional application and the inventions disclosed therein, in breach of Faseler's obligations in the Employment Agreement.

### F. Faseler Conceived of and Sought to Patent Inventions Disclosed in U.S. Patent Application No. 15/920,128 While Employed by Tracer.

32. On March 13, 2018, while employed by Tracer, Faseler filed U.S. Patent Application No. 15/920,128 (hereinafter, the '128 application, attached as Exhibit C), claiming priority to the '680 provisional application. The '128 application is entitled "Instrument Enclosure."

33. Faseler is listed as the sole inventor on the '128 application.

34. The '128 application discloses aspects of a soft removable enclosure that purported to provide better efficiency from corrosive environments and improved efficiency during installation.

35. On August 25, 2021, while employed by Tracer, Faseler executed a document with the United States Patent and Trademark Office purporting to assign all rights, title, and interest in the '128 application to Terrapin Industrial, LLC. On October 29, 2021, this document was recorded in Reel 057960, Frame 0445.

36. Faseler concealed from Tracer the '128 application, the inventions disclosed therein, and his efforts to purportedly assign his rights, title, and interest in the '128 application to Terrapin Industrial, LLC, in breach of Faseler's obligations in the Employment Agreement.

37. The subject matter of the '128 application includes technology that Faseler was involved in while an employee of Tracer. For example, the '128 application is directed to instrument enclosures for "fields of endeavor pertaining to petrochemical plants, refining facilities, upstream production of oil and gas, power plant generation, and other applicable fields." U.S. Patent Application 15/920,128, Background (co1. 1, ll. 11 – 20).

38. Tracer and nVent offer and sells similar enclosures.[2] As shown below, there are clear similarities between the subject matter of the '128 application and enclosures offered by nVent.

---

[2] *See* https://www.youtube.com/watch?v=FnekTx4LCKM.



39. The inventions of the '128 application were conceived as a result of Mr. Faseler's employment at Tracer. During his employment, Mr. Faseler actively worked to develop proposals offering customers heat tracing and insulation systems that included products and systems like those addressed in the '128 application. Absent his employment with Tracer, Mr. Faseler never would have been in a position to recognize the need for such products and systems.

40. On July 14, 2020, the '128 application issued as U.S. Patent No. 10,712,181 ("the '181 patent") (also referred to as the "Asserted Patent").

### G. Faseler Conceived of and Sought to Patent Certain Inventions Disclosed in U.S. Patent Application No. 16/928,929 while employed by Tracer.

41. On July 14, 2020, while employed by Tracer, Faseler filed U.S. Patent Application No. 16/928,929 (hereinafter, the '929 application, attached as Exhibit D), claiming priority to the '128 application and the '680 provisional application. The '929 application is entitled "Instrument Enclosure."

8

42. Faseler is listed as the sole inventor on the '929 application.

43. The subject matter of the '929 application includes aspects technology that Faseler was involved in while an employee of Tracer, as described above. (See ¶¶ 45-47.) The '929 application discloses aspects of a soft removable enclosure that purported to provide better efficiency from corrosive environments and improved efficiency during installation.

44. Upon information and belief, Faseler did not record a document with the United States Patent and Trademark Office purporting to assign all rights, title, and interest in the '929 application.

45. Faseler concealed from Tracer the '929 application, the inventions disclosed therein, and his efforts to purportedly assign his rights, title, and interest in the '929, in breach of Faseler's obligations in the Employment Agreement.

46. The '929 application remains pending at the United States Patent and Trademark Office.

### H. Faseler Conceived of and Sought to Patent certain Inventions Disclosed in U.S. Patent Application No. 18/046,285 While Employed by Tracer.

47. On October 13, 2022, while employed by Tracer, Faseler filed U.S. Patent Application No. 18/046,285 (hereinafter, the '285 application, attached as Exhibit E), claiming priority to the '680 provisional application. The '285 application is entitled "Instrument Enclosure."

48. Faseler is listed as the sole inventor on the '285 application.

49. The subject matter of the '285 application includes technology that Faseler was involved in while an employee of Tracer, as described above. (See ¶¶ 45-47). The '285 application discloses aspects of a soft removable enclosure that purported to provide better efficiency from corrosive environments and improved efficiency during installation.

50. On December 13, 2023, Faseler executed a document with the United States Patent

and Trademark Office purporting to assign all rights, title, and interest in the '285 application to Terrapin Industrial, LLC. On December 20, 2023, this document was recorded in Reel 065922, Frame 0118.

51. Although Faseler was no longer employed with Tracer when he executed the purported assignment for the '285 application, his assignment obligation to Tracer was still in effect because the inventions of the '285 application were conceived during his employment with Tracer.

52. Faseler concealed from Tracer the '285 application, the inventions disclosed therein, and his efforts to purportedly assign his rights, title, and interest in the '285 application to Terrapin Industrial, LLC, in breach of Faseler's obligations in the Employment Agreement.

**I.   Defendants are Practicing U.S. Patent No. 10,712,181, Which is Owned by Tracer.**

53. Upon information and belief, Defendants have developed a product that they refer to as the ThermaGuard Enclosure. The ThermaGuard Enclosure purports to simplify the installations of rigid enclosures with a modular installation process using an alignment manifold with pre-set holes for wiring and tubing.

54. Defendants hold out the ThermaGuard Enclosure as "Terrapin's patented ThermaGuard modular design" on Terrapin's website,

https://terrapin-industrial.com/thermaguard-instrument-enclosures/.

55. Upon information and belief, Terrapin's ThermaGuard Enclosure directly competes with enclosures for nVent's RAYCHEM® and TRACER® products.

56. Although Faseler has not executed and recorded a document with the United States Patent and Trademark office assigning rights to Tracer, Tracer is the rightful owner of the '181 patent, by operation of law, given the provisions of Section 10 of the Employment Agreement.

57. Terrapin Industrial, LLC contends that the ThermaGuard Enclosure "can be installed as a pre-assembled enclosure or piecemeal around an existing instrument without

taking the instrument offline. By providing an alignment manifold with pre-set holes for power wiring, control wiring, and process tubes, this allows for a complete installation in the field inclusive of process tubing, electrical, block heaters, calibration and testing without the need of offsite integration and schedule breaks."[3]

58. Figures 1 and 2 below provide a schematic illustration of the Terrapin Industrial, LLC's infringing product, the ThermaGuard Enclosure.



Figure 1. First Set of Images of ThermaGuard's Design[4]

---

[3] *See id.*
[4] *See id.*



Figure 2. Second Set of Images of ThermaGuard's Design

59. As illustrated, ThermaGuard includes an instrument enclosure, "comprising: a top section; a bottom section comprising a first part and a second part; one or more fasteners to fasten the first part to the second part; and one or more hinges configured to hinge the top section to the bottom section, wherein: the one or more hinges are configured to enable the top section to rotate between a close positioned and one or more open positions; the top section and the bottom section define an enclosed space in the closed position; the enclosed space is suitable for receiving a field instrument; the bottom section is configured to be fastened to a standpipe or to a bracket fastened to the standpipe; the first part of the bottom section defines a first notch; the second part of the bottom section defines a second notch; and the first notch and the second notch are configured to define an opening in the bottom section." *See* '181 patent, claim 1. Defendants holds out the ThermaGuard Enclosure as covered by a "patented" design that

12

"simplifies the installations of rigid enclosures with a modular installation process."[5]

60. As the owner of the '181 patent, Tracer has standing to enforce this patent and to seek damages and injunctive relief for any acts of infringement.

## COUNT ONE

### Declaratory Judgment that Tracer Owns the '181 Patent, the '680 Provisional Application, and the '128, '929, and '285 Applications

61. Plaintiffs repeats and reasserts all allegations in Paragraphs 1-60 above as if they were stated in full herein.

62. Tracer and Faseler entered into a contract when they executed the Employment Agreement in 2001.

63. The Employment Agreement provides that Faseler "*hereby* assigns and agrees to assign all his interest therein" in "all conceptions and ideas for inventions, improvements and valuable discoveries, whether patentable, copyrightable, or not, which are conceived or made by Employee solely or jointly with another *during the period of employment* and which are related to the business or activities of the Tracer Companies or which Employee conceives as a result of his employment by the Tracer Companies." Ex. A, § 10 (emphasis added).

64. This "hereby assigns" language qualifies as language of a present assignment of future patentable inventions and automatically vests patent ownership in the employer "by operation of law."[6]

---

[5] https://terrapin-industrial.com/thermaguard-instrument-enclosures/

[6] *Filmtec Corp. v. Allied Signal*, 939 F.2d 1570, 1573 (Fed. Cir. 1991) ("agrees to grant and does hereby grant"); *see SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1326 (Fed. Cir. 2010)("employee assigns"); *Bd. of Trs. Leland v. Roche Molecular*, 583 F.3d 832, 841 (Fed. Cir. 2009) ("will assign and do hereby assign"); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 ("agrees to and does hereby grant and assign"); *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 986 (Fed. Cir. 2008) ("agrees to grant and does hereby grant"); *IMATEC, Ltd. v. Apple Computer, Inc.*, 15 F. App'x 887, 893 (Fed. Cir. 2001) ("agree to assign and hereby do assign"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).

65. Faseler filed the '680 provisional application, as well as the '128, '929, and '285 applications while employed by Tracer.

66. The '128 application claims priority to the '680 provisional application.

67. The '929 application claims priority to the '680 provisional application and the '128 application.

68. The '285 application claims priority to the '680 provisional application, the '128 application, and the '929 application.

69. Faseler had taken steps to reduce to practice the inventions disclosed in the '680 provisional application, as well as the '128, '929, and '285 applications, at least by filing of the '680 provisional application, as well as the '128, '929, and '285 applications, respectively. The filing of a patent application is in and of itself a reduction to practice.

70. Therefore, the inventions disclosed in the '680 provisional application, as well as the '128, '929, and '285 applications are deemed to have been made and conceived of by Faseler during the term of his employment, as set forth in Section 10 of the Employment Agreement. Faseler assigned all rights, title, and interest in the '680 provisional application, as well as the '128, '929, and '285 applications, and all inventions disclosed in each respective application, to Tracer by operation of law.

71. According to the terms of the Employment Agreement, Tracer is the rightful owner and assignee of all rights, title, and interest in the '181 patent, '680 provisional application, the '128, '929, and '285 applications, and all inventions and disclosures arising thereof.

72. Faseler's purported assignments of his rights, title, and interest in the '680 provisional application, as well as the '128, and '285 applications, and the inventions disclosed therein, to Terrapin Industrial, LLC or any entity other than Tracer were ineffective because Faseler had already assigned his interest in those inventions and the '680 provisional application,

---

("hereby conveys, transfers, and assigns"). 14

as well as the '128, '929, and '285 applications to Tracer in his Employment Agreement, by operation of law.

73. Nevertheless, Faseler and Terrapin Industrial, LLC continue to hold Terrapin Industrial, LLC out as the owner and assignee of the '181 patent, the '680 provisional application, as well as the '128, '929, '285 applications, and the inventions disclosed therein.

74. An actual controversy exists between Faseler and Tracer to whether Faseler assigned his right, title, and interest in '181 patent, the '680 provisional application, as well as the '128, '929, and '285 applications to Tracer.

75. As such, Plaintiffs seek a judgment declaring that Faseler assigned his right, title, and interest in the '181 patent, the '680 provisional application, as well as the '128, '929, and '285 applications, including his right to file any subsequent related patent applications, such as any continuation, continuation-in-part, and divisional applications by operation of law, pursuant to Section 10 of the Employment Agreement, and the Court should order Defendants to execute any necessary documents to correct the record of title to the same in all applicable patent offices.

## COUNT TWO

### Breach of Contract – Failure to Disclose Inventions

76. Plaintiffs repeat and reassert all allegations in Paragraphs 1-75 above as if they were stated in full herein.

77. Tracer and Faseler entered into a contract when they executed the Employment Agreement in 2001.

78. Faseler has breached his obligations to disclose inventions under the Employment Agreement.

79. Under the Employment Agreement, Faseler agreed to "*disclose promptly to the Tracer Companies any and all conceptions and ideas for inventions*, improvements and valuable

15

discoveries, whether patentable, copyrightable, or not, which are conceived or made by Employee solely or jointly with another *during the period of employment*." See Ex. A, § 10 (emphasis added).

80. Faseler filed the '680 provisional application, as well as the '128, '929, and '285 applications while employed by Tracer. Faseler had taken steps to reduce to practice the Inventions disclosed in the '680 provisional application, as well as the '128, '929, and '285 applications, at least by filing of the '680 provisional application, as well as the '128, '929, and '285 applications, each filing of which is in and of itself a reduction to practice. Therefore, the Inventions disclosed in the '680 provisional application, as well as the '128, '929, and '285 applications are deemed to have been made and conceived of by Faseler during the term of his employment, as set forth in the Section 10 of the Employment Agreement.

81. Faseler had a duty under the Employment Agreement to disclose the '680 provisional application, as well as the '128, '929, and '285 applications, and the inventions disclosed therein, to Tracer. Instead of disclosing these inventions, he concealed them from Tracer and used them to compete against Tracer.

82. Faseler breached the Employment Agreement by failing to disclose all the inventions he made or conceived during his employment and all inventions deemed to have been made or conceived during his employment to Tracer as required by Section 10 of the Employment Agreement, including, but not necessarily limited to, the inventions disclosed and claimed in the '680 provisional application, as well as the '128, '929, and '285 applications.

83. Faseler further breached the Employment Agreement by failing to "execute any and all applications, assignments or other instruments that the Tracer Companies shall deem necessary to apply for and obtain Letters Patent of the United States or any foreign country or to otherwise protect the Tracer Companies' interest therein."

84. Faseler's failure to satisfy these obligations represent a material breach of the Employment Agreement that has damaged Defendants and otherwise has caused them harm.

85. As a direct and proximate cause of Faseler's failure to disclose the '680 provisional application, as well as the '128, '929, and '285 applications, and the inventions disclosed therein, Tracer has not had the opportunity to file a utility patent application claiming priority to or otherwise claiming the subject matter of the '680 provisional application, as well as the '128, '929, and '285 applications.

86. As a direct and proximate cause of Faseler's failure to disclose the '680 provisional application, as well as the '128, '929, and '285 applications, and the inventions disclosed therein, Tracer has not had the opportunity to participate in the patent strategy for the '680 provisional application, as well as the '128, '929, and '285 applications.

87. Tracer has sustained damages as a result of this lost opportunity, as well as fees and costs associated with the dispute underlying this action.

88. Defendants has sustained, and will continue to sustain, irreparable harm and damages as a result of Faseler's breaches in amount to be determined at trial.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief

A. Entry of judgment and order in favor of Plaintiffs and against Defendants on all counts in this Complaint;

B. Entry of judgment and order declaring that Faseler assigned his right, title, and interest in the '680 provisional application, and all inventions arising thereof, to Tracer;

C. Entry of judgment and order declaring that Faseler assigned his right, title, and

interest in the '128 application, and all inventions arising thereof, to Tracer;

  D.  Entry of judgment and order declaring that Faseler assigned his right, title, and interest in the '285 application, and all inventions arising thereof, to Tracer;

  E.  Entry of judgment and order declaring that Faseler assigned his right, title, and interest in the'929 application, and all inventions arising thereof, to Tracer;

  F.  Entry of judgment and order declaring that Faseler assigned his right, title, and interest in the '181 patent, and all inventions arising thereof, to Tracer;

  G.  Award Plaintiffs damages in an amount to be determined at trial;

  H.  Entry of injunctive relief, including preliminary and permanent injunctive relief, directing Defendants to correct records at the United States Patent and Trademark Office reflecting the assignment the '181 patent, the '680 provisional application, as well as the '128, '285, and '929 applications to Tracer, and to correct record of title to the applications in all applicable patent offices;

  I.  A judgment and order awarding Plaintiffs damages caused by Faseler's breach of contract;

  J.  Award Plaintiffs pre-judgment and post-judgment interest to the full extent allowed under the law, as well as their costs;

  K.  Entry of an order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

  L.  Entry of a permanent injunction against all of Defendants' products found to embody any claim of the Asserted Patents;

  M.  Order an accounting of damages;

  N.  Award Plaintiffs the attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code Section 38.001; and

O.     Award Plaintiffs such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

P.     An award of costs, expenses, attorney's fees, and disbursements; and,

Q.     Such other and further relief as is just and proper.

Dated: June 7, 2024                              Respectfully submitted,

By: /s/ *Robert H. Reckers*
Robert H. Reckers, Attorney-in-Charge
Texas Bar No. 24039520
Southern District I.D. No. 35685
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston TX 77002
Phone: 713-546-5626
Fax: 713-227-9508
rreckers@shb.com

Tanya Chaney
Texas Bar No. 24036375
Southern District I.D. 33555
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston TX 77002
tchaney@shb.com

*Attorneys for Plaintiffs Tracer Construction Company and nVent Thermal LLC*